## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**GARY RHINES,**                                :

       **Plaintiff**                        :        **CIVIL ACTION NO. 3:18-1643**

       **v.**                                  :                **(JUDGE MANNION)**

**DR. DAVID BALL,** *et al.*,                  :

       **Defendants**                    :


### MEMORANDUM

## I. Background

Plaintiff, Gary Rhines, an inmate formerly housed[1] in the Allenwood Federal Correctional Institution, White Deer, Pennsylvania, filed the above captioned Bivens[2] federal civil rights action pursuant to 28 U.S.C. §1331 and Federal Tort Claims Action, pursuant to 28 U.S.C. §1346(b).[3] (Doc. 1). The named Defendants are the United States of America and the following Bureau of Prisons (BOP) employees: National Inmate Appeals Administrator

---

[1] Plaintiff was released from custody and currently resides at 412 Turnberry Ct., Bear, Delaware, 19701.

[2] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

[3] Incorporated in the above captioned action is Rhines v. U.S., et al., Civil Action No. 3:20-cv-0825. This action raised the same allegations as the complaint herein, as well as named the same Defendants. Id. Thus, by Order dated November 5, 2020, the action was consolidated into the instant action. Id.

Ian Conners, former Regional Director Michael Carvajal, Assistant Health Services Administrator Ryan Parkyn, Warden Stephen Spaulding, Dr. Thomas Cullen, and Physician Assistant Beth Zalno. Id. Also named as Defendants are Dr. David Ball, an independent contractor and unknown John and Jane Does. Id.

Plaintiff alleges that he "has been complaining of back pains and shoulder problems on or about for two years." (Doc. 1, complaint). He claims that his "back pains are worse than the shoulder, so [he] stopped complaining about the shoulder problems and kept reporting the more serious problem which is the plaintiff's back." Id. Plaintiff "state[s] for the record that the defendant has given the plaintiff medical treatment." Id. He has "followed all the requirement set out by his PA, Physical Therapist, Orthopedic surgeon, Warden Captain S. Spaulding, Ian Connors, Administrator National Inmate Appeals and M.D. Carvajal, Regional Directory, in accordance with program statement 6031.04, Patient Care". Id. He alleges that "[his] issue is after completing all the requirements by the above medical professionals, the plaintiff went back to sick-call explaining that the medicine does not stop the pain, physical therapy does not stop the pain, exercises for the back does not work" and he explained "that all the treatment has failed and [he] requested an MRI to determine what is causing the pain." Id. He claims that he has "been denied at all levels for MRI, and

now every time [he] report[s] to sick-call PA Zalno says her hands are tied and she can't do anything for me, that she did all she could do and that [Plaintiff] was denied an MRI for clinical reasons." Id. PA Zalno stated that she "had a follow up with in-house Dr. Cullen and she state[d] if Dr. Cullen thought that [you] needed an MRI on [your] back he would of requested an MRI." Id.

Thus, the Plaintiff filed the instant action claiming Defendants' denial of an MRI "constitutes deliberate indifference to plaintiff serious medical needs in violation of the Eighth Amendment to the United States Constitution and defendants were negligent for intentional actions of prison officials; injuries caused by unintentional (negligent) actions or omissions by prison official[s]" and that "staff action also violate 28 U.S.C. §1346(b)." Id. For relief, Plaintiff seeks compensatory and punitive damages, as well as declaratory relief and injunctive relief, ordering Defendants "immediately arrange for the Plaintiff to receive an MRI on his back by a qualified physician." Id.

Presently before the Court is a motion to dismiss and for summary judgment, filed on behalf of Defendants Conners, Carvajal, Parkin, Spaulding, Cullen, Zalno and the United States of America, (Doc. 34); Plaintiff's motion for summary judgment, (Doc. 63); and a motion to dismiss filed on behalf of Defendant Dr. David Ball. (Doc. 102). While the parties' cross-motions for summary judgment have been fully briefed, Plaintiff, in

spite of being directed to do so, (Doc. 118), has never filed a brief in opposition to Defendant, David Ball's motion to dismiss.

For the reasons that follow, the Court will grant Defendant Ball's motion as unopposed, grant the remaining Defendants motion to dismiss and for summary judgment and deny Plaintiff's motion for summary judgment.[4]

## II. Standards of Review

### a. Summary Judgment

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement

---

[4] Because the John and Jane Doe Defendants have never been identified in the above captioned action, which has been pending for more than two years, the Court dismisses these Defendants pursuant to Fed.R.Civ.P. 21, which provides that "on motion or on its own, the court may at any time, on just terms, add or drop a party." Fictitious names may be used until reasonable discovery permits the actual defendants to assume their places, but John and Jane Doe defendants must eventually be dismissed if discovery yields no identities. See Parker v. United States, 197 Fed. Appx. 171, 173 n.1 (3d Cir. 2006).

is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Co., 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.

Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. White, 826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. Id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted."

- 6 -

L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-CV-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

    **b. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)**

    Federal Rule of Civil Procedure 12(b)(1) authorizes the Court to dismiss an action for lack of subject matter jurisdiction. Motions brought under Rule 12(b)(1) may present either a facial or factual challenge to the Court's subject matter jurisdiction. Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000). In reviewing a facial challenge under Rule 12(b)(1), the standards associated with Rule 12(b)(6) are applicable. See id. In this regard, the Court must accept all factual allegations in the complaint as true, and the Court may consider only the complaint and documents referenced in or attached to the complaint. In a factual challenge to the Court's subject matter jurisdiction, the Court's analysis is not limited to the allegations of the complaint, and the presumption of truthfulness does not attach to the allegations. Mortensen v. First Fed. Sav. & Loan Ass'n, 549

F.2d 884, 891 (3d Cir. 1977). Instead, the Court may consider evidence outside the pleadings, including affidavits, depositions, and testimony, to resolve any factual issues bearing on jurisdiction. Gotha v. United States, 115 F.3d 176, 179 (3d Cir. 1997).

Once the Court's subject matter jurisdiction over a complaint is challenged, the plaintiff bears the burden of proving that jurisdiction exists. Mortensen, 549 F.2d at 891. If a dispute of material fact exists, "the [C]ourt must conduct a plenary hearing on the contested issues prior to determining jurisdiction." McCann v. Newman Irrevocable Tr., 458 F.3d 281, 290 (3d Cir. 2006); see also Berardi v. Swanson Mem'l Lodge No. 48, 920 F.2d 198, 200 (3d Cir. 1990) (stating that a district court must ensure that a plaintiff has "had an opportunity to present facts by affidavit or by deposition, or in an evidentiary hearing," to support his claim of jurisdiction (citation omitted)).

**c. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6).**

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(quoting Phillips v.

County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (*per curiam*).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief"." Id. at 211 (quoted case omitted).

### III.   Statement of Undisputed Facts

On November 4, 2011, while an inmate at the Canaan United States Penitentiary, Waymart, Pennsylvania, Plaintiff filed Federal Tort Claim TRT-NER-2012-0238, concerning undercooked chicken at USP-Canaan. (Doc. 51-1 at 9).

On April 11, 2013, Plaintiff was designated to FCI-Allenwood. (Id. at 6).

On August 21, 2014, Plaintiff filed Federal Tort Claim TRT-NER-2014-06019, regarding the confiscation of a sweatshirt. (Id. at 8). Plaintiff filed no other Federal Tort Claims while confined at FCI-Allenwood.

On September 16, 2016, Rhines reported to sick call requesting an MRI of his neck, back and both shoulders. (Doc. 51-1 at 288-290). He was seen by Defendant Zalno. Id. His weight was 262 pounds. Id. Rhines denied fever, chills, headache, or any vision changes. Id. Rhines had full range of motion. Id. Defendant Zalno noted that the March 2, 2016, x-ray of the spine was negative. Id. Activity restrictions were ordered and Rhines was instructed on neck pain exercises, to continue with prescribed medication, and to apply warm compresses. Id.

On January 5, 2017, Rhines reported to sick call complaining of back pain and was seen by Defendant Zalno. (Id. at 283-286, 327, 329, 335). Rhines continued to request an MRI. Id. Rhines denies any numbness in lower extremities, tingling, or loss of bowel/bladder, decrease in strength or

injury/trauma. Id. Rhines expressed concern with the activity restrictions and requested that they be removed. Id. He claims he performs low back exercises and stretches and had full range of motion. Id. Defendant Zalno noted that results from Rhines' February 19, 2015, x-ray of his lumbar spine was negative with the exception of mild degenerative disc disease. Id.

On January 11, 2017, an x-ray of Rhines' lumbar spine was conducted due to ongoing low back pain. (Id. at 345). The x-ray was normal, showing no evidence for acute compression fracture or malalignment. Id. The final x-ray report indicated mild degenerative disease. Id. The results of the x-ray were reviewed by Defendant Zalno on January 12, 2017. Id. The results of the x-ray were reviewed and co-signed by Defendant Cullen on January 19, 2017. Id. at 346.

On January 23, 2017, Rhines reported to sick call, requesting the results of his x-ray of his lower back, and was seen by Defendant Zalno. (Id. at 278-281, 323-324, 327, 329). Rhines reported non-compliance with his medication. Id. Rhines continued stretching and reported that his back pain improves throughout the day and with movement. Id. Rhines denied any new symptoms since the last visit. Id.

On March 29, 2017, at 11:59 a.m., Rhines was seen by Defendant Cullen for chronic care clinic. (Id. at 418-420). Rhines complained of left knee pain. Id. He did not complain of back pain to Defendant Cullen. Id. He

reported compliance with his meds. Id. His weight was 270 pounds. (Id. at 433). Diet, exercise, and weight loss were discussed, and specific recommendations were made by Defendant Cullen. Id.

On March 29, 2017, at 2:05 p.m., Rhines reported to sick call complaining of bilateral shoulder pain and was seen by Defendant Zalno. (Id. at 415-417, 436, 439). Rhines denied weakness, shooting pain and tingling. Id. He continued to have the ability to do push-ups and exercise. Id. He had full range of motion and was able to remove his shirt with no difficulty. Id. X-rays of Rhines shoulders was ordered. Id.

On April 5, 2017, Rhines had an x-ray of his shoulders. (Id. at 485). The April 5, 2017, x-rays were unremarkable. Id.

On June 6, 2017, a bilateral uppers EMG was completed. (Id. at 406). The EMG showed mild to moderate bilateral median neuropathy at the wrist and borderline mild bilateral ulnar neuropathy across the elbow. Id. at 405-407, 472-479). The EMG was suggestive of peripheral polyneuropathy with prolongation of all sensory latencies. Id. No evidence of acute cervical radiculopathy. The EMG results were reviewed by Defendants Cullen and Zalno on June 7, 2017. (Id. at 407, 479). Rhines was referred back to orthopedist by Defendant Zalno on June 7, 2017. (Id. at 405).

On July 10, 2017, Rhines was evaluated by Defendant Zalno during sick call and complained about ongoing back pain for two years. (Id. at 400-

403, 432-433, 436, 439). Rhines was placed on activity restrictions and medication. Id. Rhines denied any weakness, numbing, tingling, radiating pain, loss of bowel/bladder control, and injury/trauma. Id. Defendant Zalno noted the lumbar x-ray result from January 11, 2017, showed Rhines has mild degenerative disc disease. Id. Rhines' physical exam showed normal muscle strength, full range of motion of the lower back, negative straight leg raise, and normal patellar tendon reflex and gait. Id. Defendant Zalno requested a one-time physical therapy clinic for low back pain. Id. Rhines was advised to continue with his current treatment plan, which included anti-inflammatory medication. Id.

On August 23, 2017, Rhines was seen by Defendant Ball, an outside orthopedic physician for neuropathy in his wrists. (Id. at 398-399, 469-470). His orthopedic report was reviewed upon receipt on September 28, 2017, by Defendants Cullen and Zalno. (Id. at 386-389; 469-470). Defendant Zalno requested carpal tunnel release surgery and an EMG. Id. at 469. Although an MRI was recommended for the lumbar spine during the orthopedic physician's examination on August 23, 2017, Rhines was specifically being evaluated for neuropathy in his wrists. Id.

On September 25, 2017, Rhines failed to show for his medical appointment with Defendant Zalno. (Id. at 391).

On September 28, 2017, Rhines was seen by Defendant Zalno in the chronic care clinic. (Id. at 386-390, 433, 438, 443-444, 449, 487). Rhines reported lower back pain and tingling in his right lower extremity. Id. On September 28, 2017, Rhines' weight was 264 pounds. Id. Defendant Zalno noted that the EMG of the lower extremities in November 2014 was within normal limits. Id. Defendant Zalno requested an EMG of Rhines' lower extremities as recommended by the orthopedist on August 23, 2017. Id. A recent trial of physical therapy was started for Rhines' lower back pain. Id.

On October 5, 2017, the Utilization Review Committee (URC)[5] disapproved of EMG of lower extremities, recommended weight loss program and then re-evaluate. (Id. at 489).

On October 17, 2017, Rhines was seen by the in-house physical therapist, for right lower back pain. (Id. at 384, 463-467). The physical therapist's report was received and reviewed on October 31, 2017. (Id. at 382-383). The physical therapist noted that Rhines reported that the previous requested MRI was denied due to his weight. Id. Rhines was given an activity restriction for sports and weights and provided with illustrated exercises to

---

[5] The URC is an open forum of clinical review, whose approval or denial of a procedure is at the sole discretion of a clinical director after reviewing a procedures necessity with clinicians. (Doc. 74 at 2).

follow. Id. A follow-up physical therapy visit for Rhines was scheduled for November. Id.

On November 8, 2017, Rhines was seen by the in-house physical therapist. (Id. at 461-462).

On November 29, 2017, an administrative note was made by Defendant Zalno after Rhines was seen by the physical therapist on November 8, 2017, for on-going lower back pain. (Id. at 373, 461-462). No change in physical exam was noted since the last physical therapy clinic. Id. An MRI of Rhines' lower spine was recommended during his therapy clinic, with a target date of March 2, 2018. Id. An MRI of Rhines' lower spine was requested by Defendant Zalno and sent to the URC for consideration. Id.

On December 7, 2017, the request for an MRI was denied by the URC because it was not medically necessary. (Id. at 492).

On December 14, 2017, Rhines reported to sick call inquiring about the denial of his MRI. (Id. at 372). Rhines was re-scheduled to see the mid-level practitioner (MLP). Id.

On December 20, 2017, Rhines reported to sick call to discuss with Defendant Zalno why his MRI was disapproved. (Id. at 371). Rhines was informed that the MRI was not medically necessary at that time and that he should continue with the current treatment plan. Id.

- 15 -

On March 5, 2018, Rhines requested to refuse surgery for carpal tunnel and ulnar nerve issues, stating that "[he] don't really need it." Id. at 531, 545, 570. Defendant Zalno counseled Rhines on the consequences and complications of refusing medical treatment. Id. Rhines continued to refuse the surgery and signed the refusal form. Id.

On March 6, 2018, Rhines was evaluated by Defendant Cullen during chronic care clinic. Id. at 527-530, 533-534, 545, 555-556. Rhines reported feeling good and had no complaints. Id. On March 6, 2018, Rhines' weight was 263 pounds. Id.

On July 12, 2018, Rhines reported to sick call complaining of lower back pain. (Id. at 526). Rhines was re-scheduled to see the mid-level practitioner (MLP). Id.

On July 20, 2018, Rhines was evaluated by Defendant Zalno for back pain during sick call. (Id. at 521-525, 533-534, 541, 545). Rhines reported that his back pain is continuous. A physical exam of Rhines indicated right lower back mild tenderness on palpation, lower extremities strength symmetric, patellar tendon reflex is normal, normal gait, full range of motion of the lower back, normal light touch. Id. Rhines claims he is able to exercise without difficulty. Id. Rhines stated he only wants an MRI. Id. He was encouraged to continue with his treatment plan. Id.

On August 20, 2018, Rhines filed the instant action, seeking compensatory and punitive damages as well as to "immediately arrange for Plaintiff to receive an MRI on his back by a qualified physician". (Doc. 1).

## IV. Discussion

### A. Federal Tort Claims Act

#### 1. Exhaustion

Defendants argue that Plaintiff's Federal Tort Claim must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction because Rhines failed to file an FTCA claim regarding negligence, prior to filing the above captioned action. (Doc. 52). The FTCA constitutes a statutory waiver of sovereign immunity for tort claims, Gotha v. United States, 115 F.3d 176, 179 (3d Cir. 1997), and allows the government to be sued "in the same manner and to the same extent as a private individual under like circumstances." See 28 U.S.C. §2674. However, because the FTCA is an express waiver of sovereign immunity, strict compliance with its provisions is required. Livera v. First Nat'l Bank, 879 F.2d 1186, 1194 (3d Cir. 1989).

A prerequisite to suit under the FTCA is that a claim must first be presented to the Federal agency and be denied by that agency. Specifically, the FTCA provides:

> An action shall not be instituted against the United States for money damages for injury or loss of property or personal injury ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. §2675(a). "The statutory language is clear that a court does not have jurisdiction before administrative remedies have been exhausted, and a court must dismiss any action that is initiated prematurely." Wilder v. Luzinski, 123 F. Supp. 2d 312, 313 (E.D. Pa. 2000) (citing McNeil v. United States, 508 U.S. 106 (1993)).

Thus, prior to commencing an FTCA action against the United States in federal court, a plaintiff must "first present [ ] the claim to the appropriate [f]ederal agency" and receive a final denial "by the agency in writing and sent by certified or registered mail." 28 U.S.C. §2675(a). A claim is considered to be presented when the federal agency receives written notification of the alleged tortious incident and the alleged injuries, together with a claim for money damages in a sum certain, in the form prescribed by the applicable federal regulations. 28 C.F.R. §14.2(a). If the receiving federal agency fails to make a final disposition of the claim within six months from the time it is filed, that failure is "deemed a final denial of the claim" for purposes of commencing suit under the FTCA. 28 U.S.C. §2675(a).

- 18 -

The Third Circuit has instructed that "[i]n light of the clear, mandatory language of the statute, and [the] strict construction of the limited waiver of sovereign immunity by the United States ... the requirement that the appropriate federal agency act on a claim before suit can be brought is jurisdictional and cannot be waived." Roma v. United States, 344 F.3d 352, 362 (3d Cir. 2003) (citing Livera, 879 F.2d at 1194). The Supreme Court has likewise explained that "[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." McNeil, 508 U.S. at 113 (holding that a court is without jurisdiction to rule on a prematurely filed action even if an agency denies the related administrative claim soon after the federal lawsuit is filed). As a result, a district court may dismiss a claim brought under the FTCA for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) where the plaintiff has not exhausted his administrative remedies prior to filing suit. See, e.g., Abulkhair v. Bush, 413 F. App'x 502, 506 (3d Cir. 2011); Accolla v. United States Gov't, 369 F. App'x 408, 409-10 (3d Cir. 2010) (finding the district court properly dismissed FTCA claim where the plaintiff filed federal suit prior to exhausting administrative remedies). Furthermore, the filing of an amended complaint after an unexhausted claim is presented to the Court does not cure the infirmity. See Ahmed v. Dragovich, 297 F.3d 201, 209 (3d Cir. 2002).

Here, the evidence of record submitted by Defendants demonstrates that Rhines filed two Federal Tort Claims while confined within the BOP. (Doc. 51-1 at 8-12). However, neither of them concerns the medical negligence raised by Plaintiff in the instant action. In fact, there is no record evidence of any attempt to file a Federal Tort Claims act regarding the claims raised herein. Thus, the Court concludes that Rhines' FTCA claim has been filed prematurely.

The statutory language set forth in the administrative tort claim procedure specifically provides that "[a]n action shall not be instituted against the United States ... unless the claimant shall have first presented the claim to the appropriate [f]ederal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. §2675(a). "The statutory language is clear that a court does not have jurisdiction before administrative remedies have been exhausted, and a court must dismiss any action that is initiated prematurely." Wilder, 123 F. Supp. 2d at 313 (citation omitted). Accordingly, the Court is without jurisdiction to hear Rhines' FTCA claim as it has been filed prematurely.

### 2. Certificate of Merit

Rhines asserts that "medical staff acted negligently to serious medical needs." (Doc. 1 at 1). Rhines does concede he has been provided medical treatment including medication, physical therapy, exercises, and

appointments with an orthopedic surgeon. Id. at 2-3. However, he complains that, despite having fully complied with "all the requirements set out by his [physician assistant]," the treatments have failed and yet prison officials are denying him the MRI he needs to determine what is causing the pain. Id. The United States argues that Rhines' FTCA claim must be dismissed because he failed to file a certificate of merit.

Pennsylvania Rule of Civil Procedure 1042.3 requires that a plaintiff file a certificate of merit ("COM") from a medical expert with respect to a professional negligence claim against the United States. Rule 1042.3 provides as follows:

> (a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either
>
> (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or
>
> (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or
>
> (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

- 21 -

PA. R. CIV. P. 1042.3(a).

If a plaintiff fails to file the required certificate within sixty (60) days of filing the complaint, the proper procedure in federal practice is to file a motion pursuant to Federal Rule of Civil 12(b)(6) to dismiss the professional negligence claim without prejudice. Stroud v. Abington Mem'l Hosp., 546 F.Supp.2d 236, 250 (E.D. Pa. 2008). "[T]he sixty-day deadline for filing a COM will be strictly construed and not lightly excused." Id. The rule applies to *pro se* as well as represented plaintiffs and constitutes a rule of substantive state law with which plaintiffs in federal court must comply. See Iwanejko v. Cohen & Grigsby, P.C., 249 Fed.Appx. 938, 944 (3d Cir. 2007); Maruca v. Hynick, 2007 WL 675038, at *3 (M.D. Pa. 2007) ("[T]he language of Rule 1042.3(a) – i.e., 'or the plaintiff if not represented ... shall file ... a certificate of merit' expressly requires that a *pro se* plaintiff must file a certificate of merit,").

Failure to file a certificate of merit under Rule 1042.3(a), or a motion for extension under Rule 1042.3(d), is fatal unless the plaintiff demonstrates that his failure to comply is justified by a "reasonable excuse." Perez v. Griffin, 304 Fed.Appx. 72 (3d Cir. 2008) (per curiam) (nonprecedential); see also Womer v. Hilliker, 908 A.2d 269, 279-80 (Pa. 2006) (holding that a court may reconsider judgment entered for failure to comply with Rule 1042.3 if

the plaintiff demonstrates a "reasonable excuse" for the noncompliance); PA. R. CIV. P. 1042.6 (authorizing entry of *non pros* judgment if a malpractice plaintiff fails to comply with Rule 1042.3).

In the instant case, Rhines was required to file a COM producing expert testimony that the requested MRI was medically necessary. Rhines filed his complaint on August 20, 2018. Thus, he was required to file a COM on or before October 19, 2018. Instead, record reflects that on August 20, 2018, Rhines filed a document titled "Certificate of Merit", that merely "request[ed] an appropriate licensed professional to supply a written statement that there exists a reasonable probability that [Defendant] conduct was a cause in bringing about the harm or deliberate indifference or conduct caused negligence to Plaintiff." (Doc. 3). Subsequently, almost a year later, on April 15, 2019, relying on language contained in this Court's October 11, 2018 denial of Plaintiff's motion for appointment of counsel, in which this Court based its denial on its "initial determination" that, inter alia, "the legal issues are relatively simple and will not require expert testimony," (Doc. 20), Plaintiff filed a response to Defendants' Notice of Intention to move for dismissal for Plaintiff's failure to file a COM, stating that expert testimony is not needed. (Doc. 33).

To the extent that Rhines suggests that his medical claims are of ordinary negligence, rather than professional negligence, i.e., that even a lay

person would have recognized the need for an MRI, this claim fails. In Grundowski v. United States, 2012 WL 1721781 (M.D. Pa. 2012), the Court set forth the proper inquiry courts should make when determining whether a claim is one of ordinary negligence, rather than medical malpractice, as follows:

> In conducting this inquiry, "a court must ask two fundamental questions in determining whether a claim sounds in ordinary negligence or medical malpractice: (1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience."…. When evidence is predicated "upon facts constituting medical treatment ... involv[ing] diagnosis, care, and treatment by licensed professionals," the evidence "must be characterized as [evidence of] professional negligence."… As noted by the Third Circuit, "a complaint 'sounds in malpractice' where 'the conduct at issue constituted an integral part of the process of rendering medical treatment.' "

Id. at *6 (citations omitted). Applying this inquiry to the instant case, Rhines' claim is that Defendants prevented him from receiving an MRI for his alleged back pain. This claim involves decisions regarding the rendering of medical treatment, which involves professional medical judgment beyond the realm of the lay person. It cannot be said that a decision of whether, when or what type of medical treatment should be provided "is so simple or the lack of skill or care is so obvious as to be within the range of experience and comprehension of even non-professional persons." Hightower-Warren v. Silk, 698 A.2d 52, 54 n.1 (Pa. 1997). Accordingly, a certificate of merit is

required for this professional negligence FTCA claim. See Paige v. Holtzapple, 2009 WL 2588849, at *10-11 (M.D. Pa. 2009) ("Where the conduct at issue constituted an integral part of rendering medical treatment, and involved diagnosis, care, and treatment by a licensed professional, ... the action is one that is characterized as a professional negligence action requiring expert testimony."). Consequently, Rhines' FTCA claim against the United States will also be dismissed for failure to file a COM.

### B. The Bivens Action

Plaintiff's constitutional claims are filed pursuant to 28 U.S.C. §1331, in accordance with Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388. (1971). Under Bivens, the District Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor. Bivens, supra. Pursuant to Bivens, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978). A Bivens-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. §1983 and the same legal principles have been held to apply. See Paton v. LaPrade, 524 F.2d 862, 871 (3d Cir. 1975); Veteto v. Miller, 829 F.Supp. 1486, 1492 (M.D.

Pa. 1992); Young v. Keohane, 809 F.Supp. 1185, 1200 n. 16 (M.D. Pa. 1992). In order to state an actionable <u>Bivens</u> claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law. <u>See</u> West v. Atkins, 487 U.S. 42, 48 (1988); Young v. Keohane, 809 F.Supp. 1185, 1199 (M.D. Pa. 1992).

### 1. <u>Personal Involvement</u>

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). <u>See</u> <u>also</u> Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003) (citing <u>Rode</u>). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207. <u>Accord</u> Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs.... [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

- 26 -

In this case, Rhines is suing Defendants Conners, Carvajal, and Spaulding because of their respective positions as National Inmate Appeals Administrator, Regional Director, and Warden, and for their involvement in responding to his administrative remedies at the Central Office, Regional Office, and institutional office levels, respectively. (Doc. 1 at 2, 7). He is suing Assistant Health Services Administrator Ryan Parkyn because he believes him to be "the overseer of all [physician assistants] in health services." (Id. at 2). While it is clear that all four defendants have been sued because of their supervisory positions, "liability cannot be predicated solely on the operation of respondeat superior." Rode, 845 F.2d at 1207; see also Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (citing Rode, 845 F.2d at 1207). "[V]icarious liability is inapplicable to Bivens and §1983 suits;" therefore, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). A defendant's contemporaneous personal knowledge and acquiescence is required in order to establish personal knowledge. Rode, 845 F.2d at 1207-08.

Additionally, after-the-fact knowledge will not suffice. "Participation in the after-the-fact review of a grievance or appeal is not enough to establish personal involvement." Rode, 845 F.2d at 1208 (finding the filing of a grievance is not enough to show the actual knowledge necessary for

personal involvement)); see also Brooks v. Beard, No. 05-3196, 2006 WL 332547, 167 F. App'x 923, 925 (3d Cir. Feb. 14, 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct.

Moreover, non-medical personnel such as Defendants Conners, Carvajal, Spaulding, and Parkyn, cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when the inmate is already receiving treatment from the prison's medical staff. See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (quoting Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993)). The undisputed evidence clearly shows that Rhines was being treated for his complaints. Thus, Defendants Conners, Carvajal, Spaulding, and Parkyn are entitled to judgment as a matter of law.

## 2. Defendant Zalno entitled to Statutory Immunity

The Public Health Service Act, 42 U.S.C. §233(a), provides that an action against the United States under the FTCA is the exclusive remedy "for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public

Health Service while acting within the scope of his office or employment." 42 U.S.C. §233(a). As such, the Public Health Service Act grants absolute immunity to Public Health Service officers from Bivens actions "arising out of the performance of medical or related functions within the scope of their employment." Hui v. Castaneda, 559 U.S. 799, 806 (2010); see also Etkins v. Glenn, 519 F. App'x 111 (3d Cir. 2013) (nonprecedential) (affirming district court's denial of a motion to add Public Health Service employee as additional defendant because she is entitled to absolute immunity from Bivens claims).

Rhines asserts that PA Zalno violated his constitutional rights under the Eighth Amendment when she ignored his requests for an MRI. However, it is undisputed that PA Zalno is a commissioned officer with the Public Health Service, (see Doc. 51-1 at 571) and was acting within the scope of her official duties when she was dealing with Rhines. Thus, Rhines cannot maintain a Bivens action against PA Zalno, a Public Health Service employee, for harm arising out of alleged constitutional violations committed while acting within the scope of her employment. Accordingly, PA Zalno is entitled to judgment in her favor as to Rhines' Bivens claim against her.

### 3 Eighth Amendment Medical Claim

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison

officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id.

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment ..." Estelle v. Gamble, 429 U.S. 97, 106 (1976). For instance, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Id., 429 U.S. at 107. "[A]s

long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a §1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

Further, a prison administrator cannot be found deliberately indifferent under the Eighth Amendment because he or she fails to respond to the medical complaints of an inmate being treated by a prison physician, or because, as non-physicians, they defer to the medical judgment of the inmate's treating physicians. Id., 991 F.2d at 69. If, however, non-medical prison personnel had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed. Spruill, 372 F.3d 236.

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. Farmer v.

Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). See McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976).

Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. Little v. Lycoming County, 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. Farmer v. Carlson, 685 F. Supp. at 1339.

Assuming, without deciding, that Plaintiff's medical needs were serious in the constitutional sense, the record evidence more than amply demonstrates that Plaintiff received medical attention, and that the attention Plaintiff received lacks the requisite deliberate indifference to support a Section 1983 claim. Plaintiff, himself, admits that he has been provided medical treatment, including medication, physical therapy, exercises, and appointments with an orthopedic surgeon. (Doc. 1 at 2-3).

At best, Plaintiff's complaint demonstrates his disagreement with the type of treatment rendered, specifically, not being approved for an MRI. Though he may have disagreed with Utilization Review Committee's assessment that an MRI was not medically necessary, his disagreement with

the course of action that was taken is not enough to state a §1983 claim. Sample v. Diecks, 885 F.2d 1099, 1109 (3d Cir. 1989) (citing Estelle, 429 U.S. at 105-06 (in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind)). This is particularly so in light of the fact that there are no allegations in the complaint that any of the Defendants intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon Plaintiff. Farmer; Rouse. To that extent, the record demonstrates that Plaintiff has been referred to an outside orthopedic practice for further treatment and care of his neck and back pain, shows that Defendants continue to be attentive to Plaintiff's situation.

Thus, the Plaintiff's complaint amounts to nothing more than Plaintiff's subjective disagreement with the treatment decisions and medical judgment of the Utilization Review Committee at the prison. Where, as here, an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. Nottingham v. Peoria, 709 F. Supp. 542, 547 (M.D. Pa. 1988). Defendants' motion for summary judgment and Defendant, Dr. Ball's motions to dismiss will be granted.

# V. <u>Preliminary Injunction</u>

An injunction is an "extraordinary remedy" that is never awarded as of right. Winter v. Natural Resources Defense Council, 555 U.S. 7 (2008).

The United States Court of Appeals for the Third Circuit has delineated four (4) factors that a district court must consider when ruling on a motion for a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured if the court denies the requested relief; (3) whether granting the requested relief will result in even greater harm to the nonmoving party; and (4) whether granting the relief will be in the public interest. See Gerardi v. Pellulo, 16 F.3d 1363, 1373 (3d Cir. 1994); Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 1970–98 (3d Cir. 1990). These same factors are used in considering a motion for temporary restraining order. Bieros v. Nicola, 857 F.Supp. 445, 446 (E.D. Pa. 1994). The moving party has the burden of satisfying these factors. Adams v. Freedom Forge Corp., 204 F.3d 475, 486 (3d Cir. 2000). While each factor need not be established beyond a reasonable doubt, they must combine to show the immediate necessity of injunctive relief. Stilp v. Contino, 629 F.Supp.2d 449, 457 (M.D. Pa. 2009) (citing Swartzwelder v. McNeilly, 297 F.3d 228, 234 (3d Cir. 2002) ). In addition, "[a]s these elements suggest, there must be a 'relationship between the injury claimed in the party's motion and the conduct

asserted in the complaint'." Ball v. Famiglio, 396 Fed. App'x 836, 837 (3d Cir. 2010) (quoting Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994) ).

Moreover, the power of a court to issue injunctive relief is also limited and circumscribed by the mootness doctrine. The mootness doctrine recognizes a fundamental truth in litigation: "[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698–99 (3d Cir. 1996).

In the instant case, Rhines seeks injunctive relief in the form of a Court ordered MRI. (Doc. 36). However, Rhines is no longer confined at FCI–Allenwood. Subsequent to the filing of the above captioned action, Plaintiff was released from federal custody.

The Third Circuit Court of Appeals has observed that, when addressing inmate requests for injunctive relief:

> As a preliminary matter, we must determine whether the inmates' claims are moot because "a federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them." Preiser v. Newkirk, 422 U.S. 395, 401 (1975) (quotations omitted); see also, Abdul–Akbar v. Watson, 4 F.3d 195, 206 (3d Cir. 1993). An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims. Abdul–Akbar, 4 F.3d at 197 (former inmate's claim that the prison library's legal resources were constitutionally inadequate was moot because plaintiff was released five months before trial.)

- 35 -

*Sutton v. Rasheed,* 323 F.3d 236, 248 (3d Cir. 2003). This Court has previously held, in a case such as the present, where an inmate seeks injunctive relief against his jailers but is no longer housed at the prison where those injunctive claims arose, his transfer to another institution moots any claims for injunctive or declaratory relief. *Fortes v. Harding,* 19 F.Supp.2d 323, 326 (M.D. Pa. 1998). For these reasons, Plaintiff's pending motion for preliminary injunctive relief must be denied as moot since he is no longer confined at FCI–Allenwood, and there is no indication that he will be housed at that facility in the foreseeable future.

## VI. <u>Conclusion</u>

Based upon the undisputed facts of record, Defendants motion to dismiss and for summary judgment will be granted. Defendant, Dr. Ball's motion to dismiss will be granted. Plaintiff's motion for summary judgment will be denied.

An appropriate order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: March 9, 2021**
18-1643-01